## THOMAS W. BENJAMIN v. LEHIGH VALLEY RAILROAD COMPANY.

Argued February 20, 1908—Decided June 8, 1908.

A verdict against defendant cannot stand where the negligence charged is its failure to keep open certain culverts running under its canal when no charge was made that the culverts were insufficient in capacity, and where it appears that the defendant kept clear the ends of said culverts for the passage of water into and out of the same and no other method of cleaning the culverts is apparent.

On rule upon plaintiff to show cause why a new trial should not be granted.

Before Justices REED, PARKER and VOORHEES.

For the plaintiff, *Frank Benjamin.*

For the defendant, *McCarter & English.*

The opinion of the court was delivered by

REED, J.    The plaintiff brought this action to recover damages from the Lehigh Valley Railroad Company for an injury caused to plaintiff's crops by a flooding of his farm lands by water which he alleges inundated his field because of the negligence of the defendant in its management of the Morris canal, of which canal the defendant is the lessee.

On June 16th, 1906, an almost unprecedented rain occurred which caused the water in the canal to overflow the banks. This water, with other surface water, gathered upon the land of the plaintiff, destroying portions of his potato crop, fodder corn then planted, and otherwise injuring his land and drowning his young chickens. The plaintiff's farm lies partly south of the Morris canal and partly to the north of the canal, between the canal and the Lehigh Valley Railroad Company's tracks. The land slopes from the south to the north and there

are hills to the south and southwest of plaintiff's farm. The surface water flows from plaintiff's land through three culverts, which the canal company.had constructed presumably at the time of the construction of the canal. After passing under the canal the water ran through three ditches to the railroad company and under the road bed of the railroad company was supposed to flow through a culvert.

The defendant is charged with negligence upon two grounds —*first,* in failing to keep the culverts under its canal open so as to afford a passage to the accumulated water on the south; *second,* in failing to so manage its·apparatus for the discharge of water at its lock at the end of that level as to relieve the congestion of water above the lock and so prevent an overflow.

There is no contention by the plaintiff that the culverts were not of sufficient capacity, if open, to discharge the water that could be reasonably anticipated. These culverts were not constructed to permit the continual flow of any natural stream. They were placed under the canal obviously to permit the passage of such surface water as the contour of the ground would be likely to send in that direction.

As already observed, it is charged that these culverts became obstructed and so failed to do the work which they were designed to accomplish. The plaintiff suggests no feasible way of keeping these culverts clean nor is any way apparent other than by keeping the ends of the culverts free from obstruction so that the water may freely enter and be discharged from these conduits. They would be naturally scoured and kept open by the flow of water. The evidence is clear and uncontradicted that five days before the storm the pits at the front of the ends of these culverts were cleaned out by the servants of the defendant. What more could have been done in the exercise of reasonable care is not apparent.

The cause of the unusual accumulation of water is accounted for by the unprecedented rainstorm of June 16th. The plaintiff, himself, says that he had lived on this farm for over fifty years and had never seen such a storm. Mr. Samuel D'Hart, a witness for plaintiff, says that he has seen heavy rainfalls but not so continuous and does not recall a

time when so much water came out of the clouds in a given time. The plaintiff relies upon the fact that the water, so accumulated upon the south side of the canal, did not subside rapidly but remained after the water on the north side had, to a great degree, disappeared. But, conceding that the culverts were not opened to their full capacity—that they were not scoured out by the running water—this fact does not prove any fault of the defendant in not doing all that could be reasonably done when its servants removed all obstructions which prevented the flow of water in and out of the culverts.

Nor do we perceive that the fact that the waters of the canal overflowed its banks and so added to the water accumulated upon plaintiff's farm can be attributed to the lack of reasonable care on the part of the defendant's lock tender. The only testimony which is relied upon to impute negligence to Mr. Axford is that of Samuel D'Hart, who says that when he got to the lock, at eleven-thirty in the forenoon of the day of the storm, the flood gates and the wickets provided for the discharge of the water from the canal were not yet opened. It appears that there is an overflow which usually accommodates the water in the canal. When Mr. D'Hart arrived at the lock the water was flowing over the bank of the canal near the lock. He says that Mr. Axford was trying to take off the boards which control the overflow so as to permit more water, flowing at a lower level, to pass out of the canal. He says that Mr. Axford was unable to take off the boards alone and he, D'Hart, assisted him in doing so, the work occupying about fifteen minutes. Mr. Axford corroborated the testimony of Mr. D'Hart respecting his statement that he, D'Hart, assisted Axford in taking off the boards. Mr. Axford says, however, that he hoisted two wickets along about nine o'clock and the other two about quarter to eleven. He says that he always, before hoisting a wicket, takes off one board of each section, then if it does not go down to these boards they commence raising the wickets. Indeed, Mr. D'Hart admits, on cross-examination, that when he arrived at the locks Mr. Axford might have had one board off. Mr. D'Hart says he arrived there at eleven-thirty. Now, Mr. John D'Hart, another of

plaintiff's witnesses, says that he passed the lock at ten-thirty or eleven o'clock and that two gates were then open. It thus appears that either both of the D'Harts are in error as to the time when they were at the lock, or else the gates were opened some time before eleven o'clock, and there is nothing to fix that time but the testimony of Mr. Axford. There is nothing to show but the testimony of Mr. Axford when he was apprised that the water in the canal was getting too high and he says that it was at ten-thirty.

And if the gates were then opened it is impossible to attribute a want of reasonable diligence in doing what he could to prevent an overflow.

It is to be remarked that what was done by the servants of the canal company in effecting the water in the next lower level could have no influence in causing the injury complained of to plaintiff's farm.

The rule to show cause should be made absolute.